CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

# UNITED STATES DISTRICT COURT

for the

Western District of Virginia

JUL 2 9 2021

JULIA C. DUDLEY, CLERK

BY: _____

DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| 17380 Lee Highway<br>Bristol, Virginia 24210 | ) Case No. 1:21mj107 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Western _____ District of _____ Virginia _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 371 | Conspiracy to defraud the United States |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Dennis O'Campo, Special Agent, DOT
*Printed name and title*

Sworn to before me ~~and signed in my presence~~. *telephonically*

Date: 7/29/21

_____
*Judge's signature*

City and state: Abingdon, VA

Pamela Meade Sargent USMJ
*Printed name and title*

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA

Abingdon Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE BUSINESS PREMISES LOCATED AT 17380 LEE HIGHWAY, ABINGDON, VIRGINIA 24210 | No. **UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A SEARCH AND SEIZURE WARRANT

I, Dennis Ocampo, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the US Department of Transportation, Office of

Inspector General (DOT-OIG), Office of Investigations, in the Mid-Atlantic Office. I have been

a Special Agent for DOT-OIG in the Washington, DC office since 2006. My duties as a Special

Agent include investigating Federal criminal statutes; and investigating cases involving waste,

fraud, and abuse of US Department of Transportation programs and funding. I successfully

completed the Criminal Investigator Training Program and the Inspector General Academy at the

Federal Law Enforcement Training Center in Glynn County, Georgia.

2.      The following facts were acquired as a result of my investigation ation into

Edilver Ramirez, the principal of Ramirez Contracting (RC), for fraudulently representing the

company as an independent disadvantaged business enterprise (DBE) when the company appears

to share payroll, employees, and office space with Boring Contractors (BC), owned by Robert S.

Jones (Ramirez's father-in-law). BC frequently uses RC as the DBE subcontractor on VDOT

contracts and Ramirez individually also appears to be employed as a project manager with BC on

projects to which RC is subcontracted. These facts are based on my personal knowledge of this

investigation, as well as the observations of other law enforcement officials, including a review

of documents related to this investigation, witness interviews, and communications with others who have personal knowledge of the events and circumstances described herein. This affidavit is intended to merely show that there is probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

3.    Based on my training experience, and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C § 371 Conspiracy to Commit Fraud Against the Government has been committed. There is probable cause to search the computers and other electronic devices of Robert S. Jones and Boring Contractors, located at 17380 Lee Highway, Bristol, Virginia 24210 ("TARGET PREMISES") (more particularly described as set forth in Attachment "A") for evidence, instrumentalities, and fruits of these crimes, as further described in Attachment B.

## DISADVANTAGED BUSINESS ENTERPRISE PROGRAM

4.    The USDOT's DBE program is governed by statute and implemented by regulations that are designed to increase the participation of DBEs in federally-funded public construction contracts. The statutes authorizing the DBE program provide that, except to the extent the Secretary of Transportation determines otherwise, not less than ten percent of the authorized funds on a federally-funded public construction project are to be expended with DBEs owned and controlled by socially and economically disadvantaged individuals. This ten percent goal is an aspirational goal at the national level, which USDOT uses as a tool in evaluating and monitoring DBEs' opportunities to participate in DOT-assisted contracts. (C.F.R. 49 § 26.41)

5.    The integrity of USDOT's DBE program depends to a large extent upon the establishment of systematic procedures to ensure that only *bona fide* DBE firms are participating in the program. Primary responsibility for the administration of the DBE program is delegated to

the state agencies that receive USDOT funds and who are required to establish DBE programs in conformity with federal regulations.

6.     Disadvantaged individuals include socially and economically disadvantaged individuals, as determined on a case-by-case basis, or an individual member of a group that is presumed to be socially and economically disadvantaged. To be recognized as a DBE (i.e. "certified"), a company must submit an application to a governmental agency.

7.     Only the value of the work performed by the DBE with its own work force counts toward DBE goals. In this same vein, expenditures incurred by a DBE count towards the DBE goals only if the DBE is performing a CUF -- that is a commercially useful function -- on the given contract. A DBE performs a CUF when it is responsible for execution of the work on the contract and is fulfilling its responsibilities by actually performing, managing, and supervising the work involved. Federal regulations also dictate that the DBE must determine quality and quantity when ordering material, negotiate price, install (where applicable) and pay for the material itself. As stated more fully in 49 C.F.R. § 26.55(c)(2): "A DBE does not perform a commercially useful function if its role is limited to that of an extra participant in a transaction, contract, or project through which funds are passed in order to obtain the appearance of DBE participation."

8.     Only an independent business may be certified as a DBE. An independent business is one the viability of which does not depend on its relationship with another firm or firms. See 49 C.F.R. §26.71(b). In determining whether a potential DBE is an independent business, one must scrutinize relationships with non-DBE firms, in such areas as personnel, facilities, equipment, financial and/or bonding support, and other resources. One must also consider whether present or recent employer/employee relationships between the disadvantaged

owner(s) of the potential DBE and non-DBE firms or persons associated with non-DBE firms compromise the independence of the potential DBE firm. One must further examine the firm's relationships with prime only contractors (prime contractors are those entities awarded the main contract for services and who may subcontract individual tasks to other companies) to determine whether a pattern of exclusive or primary dealings with a prime contractor compromises the independence of the potential DBE firm. In considering factors related to the independence of a potential DBE firm, one must consider the consistency of relationships between the potential DBE and non-DBE firms with normal industry practice. See 49 C.F.R. §26.71(b)(1-4).

9.      VDOT administered contracts are those in which contractors and subcontractors contract directly with VDOT. Locality-administered contracts are those in which contractors and subcontractors contract with a locality. The locality receives invoices and pays contractors and subcontractors directly and subsequently submits requests for reimbursement to VDOT for transportation-related projects. The typical VDOT reimbursement rate is 80% with localities paying 20% of the contract work cost.

## PROBABLE CAUSE TO BELIEVE A CRIME WAS COMMITTED

10.      In about January 2006, Edilver Ramirez established Ramirez Contracting (RC) in Abingdon, Virginia as a disadvantaged-business enterprise (DBE) providing construction contracting and consultation.

11.      Ramirez is married to the daughter of Robert S. Jones, the owner of Boring Contractors (BC), also in Abingdon, Virginia. RC and BC frequently contract with the Virginia Department of Transportation (VDOT) and/or the respective localities on various southwest Virginia highway improvement projects

12.    From 2006 to 2020, Ramirez filed annual disadvantaged business enterprise (DBE) certifications and/or Affidavits of No change to the Virginia Department of Small Business and Supplier Diversity (VDSBSD).  In these annual certifications, Ramirez attests to the independence of his company and also that his company does not require the personnel, tools or other facilities of any other company to complete the work it is contracted to perform.  On these annual certifications, Ramirez further attests that he does not perform work for any other company or entity.

13.    The affidavits of no change substitute for the full DBE certification documentation but still act as continued eligibility of the DBE to VDSBSD during interim years in which no changes to the status of the company occur.

14.    A 2019 Virginia Department of Transportation (VDOT) Assurance and Compliance Office (ACO) report alleged RC is, in fact, not an independent entity and frequently subcontracts as the DBE to BC.  ACO's report examined approximately six contracts on which BC is the prime contractor and RC is the DBE subcontractor. Funding from the United States government for the contracts examined totals approximately $3.6 million, which was paid to BC and RC.

15.    VDOT's report revealed approximately six employees shared by the two companies.  Three of the identified employees have identical employee identification numbers indicating RC and BC may use the same payroll system.

16.    My analysis of certified payrolls back to approximately 2015 for both RC and BC identified a total of 18 employees shared between the two companies.

17.    VDOT's ACO report also identified numerous instances in which Ramirez submitted requests for payment relative to various locality-administered contracts on behalf of

BC while subcontracted as the DBE on these contracts. These requests for payment appear to bear Ramirez's signature and were ultimately reimbursed by VDOT (of which a portion is federally-funded).

18.      For example, VDOT Contract UPC 51977 (locality-administered) known as the Beaver Dam Creek Trail construction project lists BC as the prime with RC as the DBE subcontractor. Between May and September 2018, Ramirez appears to have signed and submitted five applications for payment on behalf of BC totaling $337,874.32.

19.      In another example, VDOT Contract UPC 106072 (locality-administered) for the construction of a sidewalk in Chilhowie, Virginia was contracted to BC as the prime with RC as the DBE subcontractor. Between September 2018 and February 2019, Ramirez appears to have signed and submitted five requests for payment on behalf of BC totaling $385,294.70.

20.      Searches conducted of corporate email for RC and BC obtained through Inspector General subpoena and emails cited in the AOC revealed numerous emails in which Ramirez uses cramirez@rsjones.biz, an email address associated with BC. In these emails, Ramirez represents himself as an employee of BC and responds to questions posed to BC.

21.      For example, in an email dated March 1, 2018, Ramirez sent an email from estimating@rsjones.biz (another email address associated with BC) to various recipients including VDOT employees with an attached schedule of work consistent with contract tasks to be completed by BC on the Beaver Damn Creek Trail project. The bottom of the email is signed "Eddie R."

22.      An interview conducted of current BC employee Caleb Pendleton on March 1, 2021 revealed Pendleton worked for RC for approximately 3 weeks in the past five years while maintaining full-time employment with BC.

23.     An interview conducted of current BC employee Frank E. Griffith on March 1, 2021 revealed he has been a foreman for the company for about four years.  During that time, Griffith has also worked for RC for approximately three weeks over the last two years.

24.     An interview conducted of current BC employee Donald L. Trump on March 1, 2021 revealed he has been a foreman for the company for about five years but has also been employed with RC for approximately three weeks in 2019.  Trump added he thought he was working for BC during this three week period, however, he was actually working for RC.

25.     An interview conducted of current RC employee Chase Stanfill on June 2, 2021 revealed Stanfill was formerly employed by BC up until approximately one year ago.  Stanfill also related that while he was employed BC he also worked for RC for approximately two to three months from about 2015 to 2020.

26.     From January 2006 to April 2019, Virginia State Corporation Commission records listed Ramirez Contracting's registered office/registered agent address as 17380 Lee Highway, Abingdon, Virginia.  This is the same address as BC.

27.     According to law enforcement databases and surveillance conducted on-site, 17380 Lee Highway, Abingdon, Virginia, (TARGET PREMISES), is currently the business location of BC.

## PLACES TO BE SEARCHED - THE TARGET PREMISES

28.     Based upon my training and experience investigating crimes involving DBE fraud, I am aware that individuals involved commonly use personal computers and laptops in their offices.  I am also aware that it is an established practice that individuals routinely maintain records of their business accounts, contract records, financial records, offices, where they deem it safe and where they can easily access these records.  As indicated above, BC has been identified

as using TARGET PREMISES as his place of business. According to law enforcement databases and surveillance conducted on-site, 17380 Lee Highway, Bristol, Virginia, 24210 (TARGET PREMISES), is currently the business location of BC.

29.    Thus, I believe that electronic records pertaining to BC including contract documents, invoices, emails, payroll accounts and transactions, and other related evidence of DBE contract fraud are located within the TARGET PREMISES.

## COMPUTER EVIDENCE

30.    Based on my training and experience, and based on evidence gathered in this investigation, there is probable cause to believe that BORING CONTRACTORS records maintained or filed in various electronic devices including, but not limited to, computers, laptops and external hard drives, which are expected to be at the TARGET PREMISES to be searched.

31.    For example, I observed documents in this case which appear to have been generated by using software from Microsoft Word and computer evidence can assist in identifying individuals involved with or associated with the filing of these documents.

32.    Based on my training and experience, and upon information related to me by others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices, including floppy diskettes, fixed hard disks, removable hard disk cartridges, tapes, laser disks, video cassettes, magnetic tapes, memory chips, and any other media that is capable of storing magnetic coding. For several reasons, it is not always possible to search computer equipment and storage devices for data during the search of the premises, and so such items may need to be seized. Those reasons include the following:

a.    Imaging and searching computer systems involves highly technical processes that require specific expertise and specialized equipment. It often is impossible

to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search of all of the many types of computer hardware and software.  Because computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement lab, often is essential to conduct a complete analysis of the equipment and storage devices from which the data will be extracted.

b.     The volume of data stored on many computer systems and storage devices often is too large to permit a thorough search for data during the physical search of the premises.

c.     Computer users can use a number of methods to conceal data within computer equipment and storage devices, including the use of misleading file names and extensions. For example, files with the extension "jpg" often are image files; however, a user can easily change the extension to "txt" to conceal the image and make it appear that the file contains text.  Because these and other concealment strategies may be employed by a computer user, a substantial amount of time may be necessary to extract and sort through data that are concealed or encrypted to determine whether it is evidence, contraband or the instrumentality of a crime.

33.    Based upon my training and experience, and on information relayed to me by agents and others involved in the forensic examination of computers, I also know that to search for electronic evidence relating to the crimes described in this affidavit, law enforcement personnel may need to seize the following items at the TARGET PREMISES:

a. computers, storage devices, and related equipment capable of being used to commit, further, or store evidence of the offenses listed above, including programs and data on those computers or devices;

b. computer equipment used to facilitate the transmission, creation, display, encoding, or storage of data, including word processing equipment, modems, docking stations, monitors, CD burners, printers, plotters, encryption devices, and scanners;

c. magnetic, electronic or optical storage devices capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer buffers, cellular telephones, smart cards, electronic notebooks, thumb drives, external hard drives, zip drives, and personal digital assistants;

d. documentation, operating logs, and reference manuals regarding the operation of the computer equipment, storage devices, or software; and,

e. physical keys, encryption devices, and similar physical items that are necessary to access the computer equipment, storage devices, or data.

34.    Pursuant to Fed. R. Crim. P. 41(f)(1)(C), I shall ensure that a copy of the following is left with the appropriate person or at the appropriate place: the applicable search warrant, a list of items to be seized under the warrant, and a list of items seized from the search.

**CONCLUSION**

35.    Based on the information contained herein, I believe there is probable cause that Ramirez has engaged in fraud against the government. Local Virginia localities and VDOT relied on Ramirez's fraudulent representations to approve contract and subcontract work as well as payment.

36.     Therefore, I believe there is probable cause that BORING CONTRACTORS used the TARGET PREMISES to perpetrate violations of 18 U.S.C § 371 (Conspiracy to Commit Fraud Against the Government) and that evidence thereof will be found in those locations.

37.     Accordingly, I respectfully request that this Court issue a search warrant for the TARGET PREMISES, as more fully described in Attachment "A" and for evidence, instrumentalities, and fruits of these crimes, as further described in Attachment "B".

_____
Dennis Ocampo
Special Agent
Office of the Inspector General
US Department of Transportation

Sworn and subscribed before me this ___*telephonically* 29th___ day of July 2021 in Abingdon, Virginia.

_____
The Honorable Pamela Meade Sargent
United States Magistrate Judge

Seen by:

/s/ Zachary T. Lee
_____
Zachary T. Lee, AUSA

## ATTACHMENT A

### DESCRIPTION OF THE PREMISES TO BE SEARCHED

The premises to be searched are located at 17380 Lee Highway, Abingdon, Virginia 24210.







17380 Lee Highway is a single-floor (with attic space) stand alone building with yellow siding and white trim approximately 1/5 mile off Lee Highway.  On the left side of the building there is a wood deck and another entrance door.

ATTACHMENT B

ITEMS TO BE SEIZED

I.    All computer hardware, computer software, and storage media related to the operation and business of Boring Contractors and Ramirez Contracting.

II.   Electronic Records and Data relating to the operation of Boring Contractors and Ramirez Contracting, to include, but not limited to:

        A.    Personnel records
        B.    Payroll records
        C.    Contracts
        D.    Financial information
        E.    Electronic communications

## DEFINITIONS

For the purpose of this warrant:

    A.    "Computer equipment" means any computer hardware, computer software, mobile phone, storage media, and data.

    B.    "Computer hardware" means any electronic device capable of data processing (such as a computer, laptop or wireless communication device); any peripheral input/output device (such as a keyboard, printer, scanner, monitor, and drive intended for removable storage media); any related communication device (such as a router, wireless card, modem, cable, and any connections), and any security device, (such as electronic data security hardware and physical locks and keys).

    C.    "Computer software" means any program, program code, information or data stored in any form (such as an operating system, application, utility, communication and data security software; a log, history or backup file; an encryption code; a user name; or a password), whether stored deliberately, inadvertently, or automatically.

    D.    "Storage media" means any media capable of collecting, storing, retrieving, or transmitting data (such as a hard drive, CD, DVD, thumb drive, flash drive, memory stick, or memory card).

    E.    "Data" means all information stored on storage media of any form in any storage format and for any purpose.